## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**(410) 962-7780**
**Fax (410) 962-1812**

January 7, 2014

LETTER TO COUNSEL:

>      RE:      *Kathy Diane Faulders v. Commissioner, Social Security Administration*;
>               Civil No. SAG-13-1148

Dear Counsel:

On April 19, 2013, the Plaintiff, Kathy Diane Faulders, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income ("SSI"). (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Faulders filed her claims for Disability Insurance Benefits and SSI on July 7, 2009, and July 8, 2009, respectively. (Tr. 137–46). She alleged disability beginning on May 28, 2009. *Id.* Her claim was denied initially on January 31, 2010, and upon reconsideration on August 19, 2010. (Tr. 67, 76-78). A hearing was held on October 31, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 30-54). Following the hearing, the ALJ determined that Ms. Faulders was not disabled during the relevant time frame. (Tr. 17-25). The Appeals Council denied Ms. Faulders's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Faulders suffered from the severe impairments of panic disorder, impulse control disorder, bipolar disorder, personality disorder, hypertension, hyperthyroidism, and morbid obesity. (Tr. 19). Despite these impairments, the ALJ determined that Ms. Faulders retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can do no more than occasional climbing of ramps and stairs; she can never climb ladders, ropes and scaffolds; she can do no more than occasional balancing, stooping, kneeling, crouching and crawling; she must avoid concentrated exposure to extreme heat, hazardous moving machinery, and unprotected heights. She is limited to simple, routine and repetitive tasks in a low stress environment, with no strict production quotas, and no more than occasional, superficial interaction the public, coworkers, and supervisors.

(Tr. 21). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Faulders could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 24).

Ms. Faulders presents several arguments on appeal. First, she argues that the ALJ did not properly evaluate her panic disorder with agoraphobia at Step Two, or elsewhere in the sequential analysis. Second, she argues that the ALJ failed to give sufficient weight to the opinions of her treating and consulting physicians. Third, she contends that the ALJ failed to conclude that she met or equaled Listing 12.04 or 12.06. Fourth, Ms. Faulders broadly challenges the ALJ's RFC assessment and credibility evaluation. Fifth, she argues that the ALJ failed to include all of her limitations in the hypothetical with the VE. Finally, Ms. Faulders argues that her case merits remand to the agency because the Appeals Council failed to analyze additional evidence regarding her mental state. Each argument lacks merit, and is addressed in turn.

Ms. Faulders argues that the ALJ should have deemed her agoraphobia severe at Step Two of the sequential analysis. At Step Two, the ALJ must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(a)(4)(ii). An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a); 20 CFR § 416.920(c). The claimant bears the burden of proving that his impairment is severe. *Johnson v. Astrue,* Civil Action No. PWG–10–3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater,* 65 F.3d 1200, 1203 (4th Cir. 1995)). Ms. Faulders's medical evidence of record shows diagnoses of panic disorder with agoraphobia. *See* (Tr. 339-42, 344-45, 367-69, 371, 385, 420, 510, 518, 522, 524). However, the ALJ deemed "panic disorder" to be a severe impairment. (Tr. 19). Ms. Faulders does not cite to any functional limitations inherent in agoraphobia that the ALJ did not already expressly consider in connection with Ms. Faulders's panic disorder and other severe impairments. Moreover, any error would be harmless because the ALJ appropriately considered agoraphobia as a non-severe impairment at the later stages of the sequential analysis. In the RFC assessment, the ALJ specifically noted that Ms. Faulders claimed to experience "depression, agoraphobia, and severe mood swings." (Tr. 21). The resulting RFC significantly limited Ms. Faulders's interaction with the public, co-workers, and supervisors. Therefore, remand is not required to address the ALJ's Step Two findings.

Ms. Faulders next argues that the ALJ failed to appropriately weigh the opinions of her treating and consulting physicians. Pl.'s Mot. 7-8. Ms. Faulders provides no explanation as to the alleged deficiency in the ALJ's analysis. In reviewing Ms. Faulders's medical evidence of record, and the ALJ's analysis, I find that the ALJ's assignment of weight is supported by substantial evidence. The two opinions that the ALJ accorded substantial weight were both supported by the record. Dr. Wessel's mental RFC assessment noted no marked limitations in any areas, and concluded that Ms. Faulders "appears compatible with work related functions and activities." (Tr. 425-27). Dr. Miller's GAF assessment of 55-59 was also given substantial weight, as it too was consistent with the record. Specifically, the GAF score was consistent with Ms. Faulders's activities of daily living report, which noted that Ms. Faulders can perform basic activities, such as driving, housework, and limited cooking. (Tr. 23). The ALJ accorded only moderate weight to Dr. Wessel's Psychiatric Review Technique, because there is no evidence in the record showing a psychiatric hospitalization of more than two weeks. *Id.* Finally, the ALJ gave only minimal weight to a March 20, 2009 opinion of Dr. Wagner, Ms. Faulder's treating psychiatrist, because Dr. Wagner's opinion dated back to a period of prior adjudication by an ALJ. *Id.*

Ms. Faulders also contends that the ALJ erred by failing to conclude that she met Listings 12.04 or 12.06, or both. Ms. Faulders has failed to satisfy her burden of demonstrating that her impairment meets or equals all of the requirements of a Listing. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir. 1986); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Listing 12.04 governs affective disorders, which are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. Listing 12.06 refers to anxiety related disorders where the anxiety is "either the predominant disturbance or it is experienced if the individual attempts to master symptoms." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. Both Listings require the claimant to satisfy the "paragraph A" and "paragraph B" criteria, or in the alternative, the "paragraph C" criteria. The ALJ compared Ms. Faulders's impairments with the requirements of Listings 12.04, 12.06, and 12.08, and concluded that neither the criteria in "paragraph B," nor the criteria in "paragraph C," were met. (Tr. 20).

The "paragraph B" criteria require the claimant to demonstrate that her impairment results in at least two of the following: (1) marked restrictions of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. (Tr. 20). The ALJ concluded, and I agree, that Ms. Faulders's impairments fall short of the "paragraph B" criteria. Ms. Faulders has only slight restrictions of daily living, as she testified at her hearing that she drives approximately two to three times a week, visits her grandmother, cleans occasionally, and took care of her boyfriend after he suffered a heart attack. (Tr. 35-37). The ALJ also concluded that Ms. Faulders had "moderate" difficulties in social functioning, and maintaining concentration, persistence, or pace. (Tr. 20). Several mental status assessments show that Ms. Faulders had coherent thoughts and calm moods. *See* (Tr. 339, 341, 345, 395, 487, 510). With respect to concentration, the ALJ stated that, "[t]reating physicians largely noted normal memory and concentration…" (Tr. 20). The treatment notes of Dr. Wagner, Ms. Faulders's treating psychiatrist, do not mention Ms. Faulders's memory at all. *See* (Tr. 391-418). However, notes following an examination by Dr. Rao, a family physician, described Ms. Faulders's psychiatric state as "intact, recent and remote memory. Mood and affect are normal." (Tr. 470). There is no evidence in the record to support a finding that Ms. Faulders suffered from repeated episodes of decompensation, each of an extended duration. Ms. Faulders also fails to cite to any evidence suggesting that her impairments might satisfy the "paragraph C" criteria of Listing 12.04, which require a showing of a chronic affective disorder, including repeated episodes of decompensation, or a risk of decompensation upon a minimal increase in mental demands, or an inability to function outside a highly supportive living arrangement. Similarly, Ms. Faulders fails to satisfy the "paragraph C" criteria of Listing 12.06, which require a claimant to show that her impairment results in a complete inability to function independently outside the area of his or her home. 20 C.F.R. Part 404, Subpart P, Appendix 1,§ 12.06C.

Ms. Faulders next argues that the ALJ's RFC assessment was inadequate because the ALJ did not properly evaluate her mental impairments. Pl's Mot. 9-12. However, as discussed above, the ALJ discussed Ms. Faulders's mental impairments at Steps Two and Three of the sequential analysis. Moreover, the ALJ's discussion of the RFC determination included a detailed analysis of Ms. Faulders's ability to perform work-functions. (Tr. 21-22). I find that the

ALJ's discussion provided a sufficient basis to understand his reasoning, and that his opinion is supported by substantial evidence. The RFC determination, therefore, provides no basis for remand.

I also find that the ALJ did not fail to evaluate Ms. Faulders's subjective complaints. In accordance with the requirements of 20 C.F.R. §§ 404.1529(b) and 416.929(b), the ALJ followed the two-step process for evaluating a claimant's subjective complaints. (Tr. 21-22). First, there must be objective medical evidence of a medical impairment reasonably likely to cause the symptoms alleged by the claimant. *Chater*, 76 F.3d at 594. After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. The ALJ determined that Ms. Faulders's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 22). However, the ALJ did not find Ms. Faulders's statements as to the intensity, persistence, and limiting effects of her symptoms to be fully credible. *Id.* In the ALJ's credibility analysis, he noted that Ms. Faulders claimed to have poor impulse control, panic attacks, and trouble sleeping. (Tr. 22). Yet, evidence in her medical record contradicted the severity of her claims. *Id.* In a Consultative Examination Report, Dr. Miller noted that Ms. Faulders "tended to present as overdramatic." (Tr. 419). Other evidence that the ALJ highlighted demonstrated that Ms. Faulders's mental condition improved at times, and was even described as "fairly stable" by her treating psychiatrist. *See* (Tr. 484, 488, 510). I find that the analysis provided by the ALJ included substantial evidence to support his credibility determination.

Ms. Faulders argues that the ALJ's hypothetical to the VE did not include all of her limitations. Pl.'s Mot. 8-9. Ms. Faulders contends that "each and every symptom must be included in a question to the VE." *Id.* at 8. However, the ALJ is afforded "great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, No. 98–1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (citing *Martinez v. Heckler,* 807 F.2d 771, 774 (9th Cir. 1986)). The ALJ's hypothetical was largely based on the RFC, which included limitations that accommodated Ms. Faulders's physical and mental disorders. *See* (Tr. 50-52). Given that I find that the ALJ's RFC assessment is supported by substantial evidence, I similarly find that the hypothetical posed by the ALJ is supported by substantial evidence.

Ms. Faulders also contends that the agency failed to consider additional evidence related to her mental disorders. As a result, she argues that the ALJ erroneously assessed her RFC. Ms. Faulders submitted additional evidence to the Appeals Council on February 20, 2012. The evidence included a "Medical Assessment of Ability to do Work-Related Activities," and responses to a set of interrogatories, both completed by Dr. Wagner. (Tr. 519-532). In its decision denying review, the Appeals Council stated that it considered the additional evidence, but found that there was no basis for changing the ALJ's decision. (Tr. 1-2). The Appeals Council must review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); *see* 20 C.F.R. § 404.970(b). Evidence is "new" if "it is not duplicative or cumulative." *Wilkins,* 953 F.2d at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* "[T]he

regulatory scheme does not require the [Appeals Council] to do anything more than what it did in this case, i.e., 'consider new and material evidence . . . in deciding whether to grant review.'" *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011). The Appeals Council is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.* Because the record clearly demonstrates the Appeals Council's receipt and consideration of the 2012 information from Dr. Wagner, (Tr. 1-4), I cannot conclude that the Appeals Council discharged its duties improperly.

Moreover, Dr. Wagner's 2012 opinions are nearly identical to the previous medical assessment that Dr. Wagner completed on March 20, 2009. (Tr. 496-505, 515-32). Both sets of interrogatories discussed the severity of Ms. Faulders's mental disorders, and opined that Ms. Faulders was "unable to cook, clean, shop or pay bills" (Tr. 500, 527), and that Ms. Faulders "cannot accomplish routine tasks without assistance from the family." (Tr. 502, 529). Even if the 2012 forms were viewed as "new" because the ALJ did not substantively consider the earlier forms (Tr. 23), in light of the ALJ's opinion as a whole, there is no reasonable possibility that the evidence would be "material" or that the outcome would have changed. The ALJ's opinion included a comprehensive review of Dr. Wagner's treatment notes, most of which "indicated that the claimant's mood was normal with good judgment and insight." (Tr. 23). In light of the ALJ's review of the treatment notes and the significant RFC restrictions relating to mental health, the 2012 evidence from Dr. Wagner would not be material to the ALJ's determination.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (EDC No. 16) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge